# United States Fidelity & Guaranty Co. v. Union Trust & Savings Co.

### *Action for Breach of Official Bond of Register in Chancery.*

1. *Official bonds; payable and conditioned as required by statute regardless of stipulations in bond.*—A bond intended by the obligor thereon to be the official bond of a public officer, and under which said public officer acts, is, by force of the statute (Code § 3070, 3087, 3089) the official bond of such officer, and in legal contemplation and effect such bond is payable and conditioned as the statute requires the official bond of such officer to be payable and conditioned; and it is, therefore, of no consequence that the bond so executed is payable and conditioned differently from that which the statute requires for official bonds, or that the conditions expressed in the bond may not have been broken by the officer.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This suit was brought in said City Court on March 22, 1902, by Union Trust & Savings Company as trustee for Edmund Tatum and Clark Tatum, against The United States Fidelity & Guaranty Company as the surety upon the official bond of W. H. Parks as register in chancery, to recover seventeen hundred dollars, damages for the conversion of certain specified sums of money alleged to have been received by said register in his official capacity, belonging to said Edmund and Clark Tatum, and by the register deposited to his credit as register in the bank of Josiah Morris & Company whereby the money was lost to said beneficiaries. The complainant, after showing the appointment of W. H. Parks as register, averred, among other things, that on the 12th day of November, 1898, said W. H. Parks and the defendant as his surety executed a certain bond as the official bond of said Parks as such register, in the sum of ten thousand

dollars, payable to the State of Alabama and approved by W. L. Parks as chancellor of the division; that said register acted under said bond; that during the time he was so acting under said bond there came into his hands as register the sum of $2,835, belonging to the said Edmund and Clark Tatum under a trust in their favor created by the last will and testament of Berry Tatum, Sr., deceased, which sum the register was required to retain in his hands subject to the orders of the court and that said register, while acting under said bond, "made a general deposit of a portion of said fund in his name as said register in and with the banking house of Josiah Morris & Company, as follows:" July 10, 1899, $320; July 31, 1899, $11.10; September 30, 1899, $40; January 4, 1900, $40; January 16, 1900, $220; June 26, 1900, $40; June 12, 1900, $40; July 12, 1900, $1,003.33; August 2, 1900, $318. The complaint then averred that "by reason of said general deposit of said several sums by said Wm. H. Parks as said register with said Josiah Morris & Company, the said sum of seventeen hundred dollars was lost as aforesaid." The due appointment of the plaintiff as trustee as aforesaid was alleged. The complaint made an exhibition of a copy of the bond sued on. The instrument purported to be the bond of the register as an "employe" in the service of the State of Alabama as the "employer," for the register's "honesty in the performance of his duties in the said position." It recites that the said "employer" had delivered to the surety company "a statement in writing relative to the duties, responsibilities and checks to be used upon the employe in said position and other matters," and provided that in consideration of thirty dollars" paid as premium for the period from November 12, 1898, to November 12, 1899, at 12 o'clock noon and upon the faith of the said statement aforesaid by the employer it is hereby agreed and declared that subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, the company shall within three months next after notice, accompanied by satisfactory proof of loss as hereinafter mentioned, has been given to the company

make good and reimburse the employer all and any pecuniary loss sustained by the employer of money securities or other personal property in the possession of the employe or for the possession of which he is responsible by any act of fraud or dishonesty on the part of said employe in connection with the duties of the office or position hereinbefore referred to and occurring during the continuance of this bond or any renewal thereof and discovered during the continuance or within six months thereafter or within six months from the death or dismissal or retirement of the employe from the service of the said employer." It was further provided that notice in writing to the surety company should be given of any act of omission or commission on the part of the "employe" covered by the bond, immediately after knowledge of the same came to the "employer"; that any claim in respect to the bond should be in writing addressed to the president of the company immediately upon the discovery of any loss for which the company was responsible and within six months after the expiration or cancellation of the bond and that upon the making of such claim the bond should wholly cease as regards any liability on the part of the company and should be surrendered to the company on the payment of such claim. It was further stipulated that the company might cancel the bond at any time "by giving one month's notice to the employer and refunding the premium paid less a pro rata part thereof for the time said bond shall have been in force, remaining liable for all or any default covered by this bond which may have been committed by the said employe up to the date of such determination and discovered and notified to the company within the limit of time hereinbefore provided for." It was further stipulated that no action would lie for the recovery of any claim for any breach of the bond unless commenced within twelve months after the presentation of such claim as aforesaid, and that it was essential to the validity of the bond that the "employe's" signature thereto should be subscribed and witnessed; and it was further provided, in conclusion, that the "employe" should save the surety company harmless "from and against all loss and dam-

age of whatever nature or kind and from all legal and other costs and expenses direct or incidental which the said company may at any time sustain" in consequence of having entered into the bond. The signature of W. H. Parks, the register, was not witnessed.

The defendant demurred to the complaint, the substance of the demurrer as set forth in the several grounds thereof being that the complaint showed no right of action in the plaintiff; showed no breach of the bond; that it did not show that the defendant was surety on the official bond of the register; that the bond had expired by limitation at the time of the alleged breach; that it was not shown that notice of the alleged breach was given as required by the bond; that it did not appear that three months had expired after notice given as required by the bond; that no right of action was shown in that it did not appear that the alleged breach was by reason of the fraud or dishonesty of the register; that no action would lie on the bond except for the fraud or dishonesty of the register; that the bond was void because the signature of Parks thereto was not witnessed; that the period of one year had expired when the alleged breach occurred; that it was not alleged that the State of Alabama had suffered any pecuniary loss by reason of any act of the said Parks as register; and that it was apparent from the complaint that Parks had entered into no obligation whatever binding him to any one except the defendant in connection with said office of register, and that the suit was prematurely brought in that the liability of the principal had not been ascertained.

The demurrer was overruled by the city court. Thereupon the defendant refused to plead further and the court, after hearing the evidence, rendered judgment for the plaintiff in the sum of $2,443.34 and for costs. The assignments of error are based on the action of the trial court in overruling the demurrer to the complaint, and in rendering judgment for a greater sum than was claimed in the complaint.

MARKS & SAYRE, for appellant.—As the instrument sued upon contained no promise by Parks enuring to the

plaintiffs, there was a misjoinder of defendants in the Bryant case, in making Parks a party.—*Painter v. Mauldin,* 119 Ala. 88; *Evans v. Killand,* 9 Ala. 46; *Ferry v. Burchard,* 21 Conn. 603. The plaintiffs could not sue in their own names on the obligation.—See authorities, *supra.*

The bond is to answer for any loss occurring by reason of fraud or dishonesty of Parks, and the complaint alleges no breach of that condition. This means moral fraud, and fraudulent intent.—*Wolf v. Stix,* 99 U. S. 1.

The bond had expired by its own limitation at time of breach complained of.—*City Council v. Hughes,* 65 Ala. 201; Burge on Suretyship, 69.

The liability of the surety was defined and limited by the letter and every condition expressed in the instrument sued on, and could not by implication be extended beyond them, and the complaint was defective, in not alleging conformance with all the conditions thereof. *City Council v. Hughes,* 65 Ala. 201; *Anderson v. Bellinger,* 87 Ala. 334; *Miller v. Stewart,* 9 Wheat. 681; *United States v. Hudson,* 10 Wall. 395; *Foxcroft v. Nevins,* 4 Greene (Me.) 75; *Clark v. Lamb,* 76 Ala. 406; Mechem on Public Officers, § 282.

HORACE STRINGFELLOW, *contra.*—There can be no doubt that the bond sued on did not conform to the statutory requirements respecting official bonds, its principal variation being in its conditions but the complaint avers that the Register acted under said bond, and was so acting at the time of the said conversion, from which it is alleged the loss to the trust estate accrued. The bond here sued for clearly comes within the curative effect of Section 3089 of the Code of 1896; therefore the bond sued on stands in the place of the Register's official bond, subject "on its condition being broken," to all the remedies which the person agrees might have maintained thereon had it complied with all the requirements of the law.—*McKissack v. McClendon,* 133 Ala. 558.

But even assuming that the bond only indemnified against the *mala fides* of the employee the complaint

shows a good cause of action. "Dishonesty" is defined "a breach of trust." The complaint avers that the general deposit was made of the trust funds. This was in violation of Section 4668 of the Criminal Code.—*Alstons' case,* 92 Ala. 134. "Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent."—*Reeves v. States,* 95 Ala. 31.

It was unnecessary that the complaint should aver that notice was given and suit brought within the time stated in the bond. The appellant was notified by Section 3089 of the Code that if the bond was acted upon it stood in the place of the official bond and was subject to all of its remedies. The statute was part of the bond, and the notice and time of suit stipulated in the bond are not required by it. The same is true of the stipulation in the bond as to the period of its operation. The Register was elected for six years and the bond here given as his official bond and standing in its place it is for the term stated and the surety could only be released from liability by compliance with sections 3124-3129 of the Code. But the complaint here shows the lending of the trust funds was within the time limited by the bond and its renewal. It was unnecessary to aver that the renewal was in writing.—*Dexter v. Ohlander,* 89 Ala. 262.

One executing an official bond with an insufficient or limited condition would be charged by Section 3089 with knowledge of the fact that notwithstanding such condition the bond if acted under would contain the general condition named in the statutes, and the surety in executing and permitting the bond to be acted under would be presumed to consent to it. "A statute which declares the legal obligation of an official bond is a part of its terms as fully as if its words were expressly written within its condition."—*Clark v. Lamb,* 76 Ala. 407. A surety executing such bond voluntarily assumes liability for his principal according to the obligation of the bond as the law defines it.—*Morrow v. Wood,* 56 Ala. 8; *McKissack v. McClendon,* 133 Ala. 558, 32 So. Rep. 486.

McCLELLAN, C. J.—A bond intended by the obligors thereon to be the official bond of a public officer and

which such public officer acts under is by force of the statute the official bond of such officer, and in legal contemplation and effect such bond is payable and conditioned as the statute requires the official bond of such officer to be payable and conditioned.—Code, § § 3070, 3087, 3089; *Sprowl v. Lawrence*, 33 Ala. 674; *Lewis v. Lee County*, 66 Ala. 480, 488-9; *Steele v. Tutwiler*, 68 Ala. 107; *McKissack v. McClendon*, 133 Ala. 558.

That the bond sued on in this case was intended by the obligors to be the official bond of Wm. H. Parks as register in chancery for the district constituted of the county of Montgomery. its own terms fully demonstrate. That said Wm. H. Parks acted as such register in chancery under said bond, and was so acting thereunder at the time of the default complained of, is shown beyond controversy. It is, therefore, of no consequence that the condition of the bond is different from that which the statute prescribes for official bonds, nor of any consequence that the condition expressed in the bond may not have been broken by the officer. The condition, which, though not written into this paper, is as essentially a part of it for all the purposes of this action as if it and it alone were written into it, is that the officer, Wm. H. Parks, will faithfully discharge the duties of the office of register in chancery during the time he continues therein, or discharges any of the duties thereof—(Code, 1896, § 3070); and the obligors thereon are liable for any breach of this condition for the use and benefit of every person sustaining damages by such breach—(Code 1896. § 3087). It would be immaterial whether such bond is in terms payable to the state: The law makes it so payable. It would be immaterial to the sureties liability whether Parks executed it: The surety is liable whether he did or not. And it is immaterial that the instrument though signed by Parks, yet on its face imports no obligation on his part to the state: The law imports that obligation into the bond. On the other hand, no account is to be taken of and no operation is to be given to the several stipulations and conditions set down in this paper which tend to limit the liability which an official bond imports or to clog or impeach the

remedy for the enforcement of such liability. The right of recovery is the same in the abstract and as to amount as if the bond had expressed the statutory conditions and those only; and action upon it is maintainable under the same conditions.

It is altogether inapt and inaccurate to say that the city court in its ruling on the demurrer in line with the foregoing vews, made a bond for the partes or even that the law has made a bond which the parties have not made. The law, known of all men (and even of all corporations), said to these parties, if you put forward a paper writing as and for the official bond of this officer and the officer acts under it, that paper writing imports and involves certain liability upon you in certain contingencies. The parties make and exploit this writing for this purpose knowing the legal consequences of their action, and they thereby take those consequences upon themselves. The law, as it was competent for the law to do, merely gave a certain character and attached certain liabilities to certain acts. The defendant performed those acts, and it is not only no legal wrong, but not even a legal hardship for the law through its ministers to enforce such liability.

The city court committed no error in overruling the demurrer to the complaint.

There is error, however, in respect of the amount for which judgment was rendered. The complaint claims seventeen hundred dollars damages and no more. It alleges that by reason of the misfeasance of the register, said sum of seventeen hundred dollars was lost to the plaintiff, and there is no averment that any other sum was lost. It also avers that plaintiff had made demand upon the register for that sum, and there is no allegation of a demand for any other sum. It is quite true that in averring the conversions by the officer divers amounts are stated which in the aggregate equal the sum for which judgment was rendered; but it does not follow that all of these several sums were lost to plaintiff. To the contrary, it may be that enough had been repaid before suit brought to reduce the total loss to the sum of seventeen hundred dollars averred in the complaint to be

the total loss.  Consequently there is no room for the application of the principle that "a judgment for the amount shown due by the declaration or petition may be given although it is greater than the damages laid in the *ad damnum* clause proper."  The complaint did not show that such greater amount was due.  Because of this error as to amount the judgment of the city court must be reversed.  This court will render the judgment the city court should have rendered, for the sum of seventeen hundred dollars with interest from the time of the last deposit made by the register.—*Lister v. Vowell, et al.* 122 Ala. 264, 269.

Reversed and rendered.

HARALSON, DOWDELL and DENSON, J.J., concurring.